May it please the Court, my name is Ronald Dean. I'm the attorney for plaintiff appellant Elinor Otto. Why don't you just give your opposing counsel just a minute, just a moment to set up here. You will recall that in this case the question is how is Ms. Otto's pension calculated once she has started receiving a pension and continues to work, continues to accrue additional benefits. The question focuses on section 4.4J2 of the plan and how it's to be interpreted. I have to show that the provision is unambiguous. If there is ambiguity, if it admits defendants of interpretation as well as mine, they have discretion to resolve that ambiguity and they have made a decision and resolved it that way. Why doesn't the use of the phrase based on introduce sufficient ambiguity just to end the case right there just for the reason you just gave? Because based on is in the previous paragraph. Based on is not used in two, it's only used in one. Based on refers to a unique thing that happens on the first determination and we're talking here about redetermination. The determination is based on not your accrued benefit at the time you start your pension, April 1st, but rather the preceding December 31st. No one contends that that's what happens in a redetermination. So yes, the determination, the initial determination is clearly based on the accrued benefit as of a previous time. But the redetermination provisions specifically don't use based on. The nine times accrued benefit is used in just section 4.4. That's the only example of it being based on accrued benefit. Well, I'm just wondering, though, the plan does not define redetermined. So why isn't the plan ambiguous based on that? Because it seems like that might be... In 4.4J2, it starts out, a member's accrued benefit shall be redetermined. And everyone agrees that that means you take the rate times the years. Page 21 of defendant's answering brief. The first step is to take the new rate times the years. So redetermined means rate times years. The question becomes then in the provided, however, clause where it says the accrued benefit as redetermined rate times years shall be reduced by this big number, this actuarial value. And everyone agrees that's what's to occur. But then the next use says the accrued benefit, not below the accrued benefit as redetermined. So the question is, is it reasonable to read that one time of accrued benefit as redetermined as including the reduction? Well, we submit that it's not because the previous words phrase says that accrued benefits as redetermined shall be reduced. So you're arguing that accrued benefit in the plan means years times rate? Yes. And everyone agrees to that. Well, because it seems like the plan does not seem to be consistent with the term accrued benefit. Because I think it's at ER 92, the plan says that the member's accrued benefit shall be increased by a formula. And at ER 150, the plan says that the accrued benefit shall be reduced by calculations. I'm sorry. And you're talking about the plan value? Correct. It just seems like that term is modified or adjusted at different points in the plan. Yes. Starting with 150, the member's accrued benefit computed under Section 4.2, which this is what happens if there's prior termination, no prior termination, but the section deals with how do you calculate the benefit when there's a subsequent termination? And do you add the accrued benefits? Do you start a new accrual of benefits? But it's still using accrued benefit as defined in Section 4.2, rate times years. And the other one, I believe, was 92. 92. And I think there it says accrued benefit shall be increased by a formula. Yes. I think this is Section 4.3. No, it can't be. Yes, 4.2. Yes, we're still in Section 4.2, and there are provisions for exceptions for rate times years in 4.2 for certain groups. In other words, if you are in this peculiar group, which Ms. Otto was not, then her accrued benefit would be effective because the union negotiated an additional accrued benefit. But the definition of accrued benefit, there is no such increase or decrease in Section 4.4J2 saying here accrued benefit means something other than 4.2. As a matter of fact, we all agree that the first use of accrued benefit in J2 means rate times years. There's no dispute about that. It may be that, and apparently is in other sections, 4.4, 4.2 definition is increased because of certain things. There's no such increase here. The defendant is contending there's actually a decrease. So they say accrued benefit shall be redetermined, and that means rate times years now add any increase in rate, now add any increase in years, and we all come up to the starting number. We're all agreed that's the accrued benefit. And we're all agreed that the January 1st increase is adjusted for any increase in such accrued benefit the second time, and that's rate times years. But then we get to the provided, however, and we agree on the meaning of 3, that the accrued benefit rate times years as redetermined rate times years is reduced. We all agree, and we agree on the numbers by which it's reduced. What we don't agree on is the fourth use, but not below the accrued benefit as redetermined as of the immediately preceding. They're saying in that instance accrued benefit no longer means rate times years. It means rate times years less the reduction. And yet that doesn't explain why the previous one had to say shall be reduced. So in order for their first argument to prevail, that accrued benefit as redetermined now means not the accrued benefit rate times years, but means the accrued benefit rate times years less the reduction, even though it doesn't use the word as reduced. In other words, they're inserting two words, but not below the accrued benefit determined or redetermined and reduced as of the preceding December 31st. But we're not allowed to introduce new words unless it's the natural inference, unless there can be no other way. So either they're inserting as reduced before accrued benefit, the reduced accrued benefit arguably, but it doesn't say the reduced accrued benefit. Or the accrued benefit redetermined and reduced, but it doesn't say that. It occurred to me that defendant is arguing that they're doing everything the statute allows them to do. And it occurred to me from my contracts professor said if you want to follow the statute, track the words of the statute. Here they have a Rube Goldberg of trying to accomplish the same thing the statute tries to accomplish. If we use their formulation, all we have to do is change the provided, however, to read that any additional accrual, and this is from the statute, shall be treated as satisfied. You keep saying statute. Do you just mean the plan? Is that what you're talking about? No, no, the statute. I'm sorry. You're right. I got ahead of myself. The statute was amended in 1989 to say, okay, you now have to provide for additional accruals for these people, but you can have an offset. And it said it in certain words. So why didn't they just take those statutory words and put them in the plan? And it would have read provided, however, that any additional accrual of benefits, quote, shall be treated as satisfied to the extent of the actuarial equivalent of the in-service distribution of And we say, and no one has suggested another way, where the floor goes up every year. It's one year behind the actual accrual. This is how it would be set, the exact same way they set it. You know, I've tried rearranging and doing other things and saying, is there an easier way? Is there a clearer way of saying, we want the floor to be one step behind the participant? Before your time is up, though, I want to ask you, why isn't your interpretation inconsistent with the plan's stated purpose of providing income during retirement? Well, the plan has many purposes, of course, one of which is provide income during retirement. And then Congress says, excuse us, but after age 70 and a half, we're going to have to start distributions. And if the person is still working, here's how you can, you have to provide those additional accruals. You have to. The law says you have to. But you can take a credit, if you want to. They took a partial credit. That's what this language means. They could have taken a complete credit by tracking the statute. Many plans take no credit. Do they claim that they're inconsistent with their goals? No. They say, we're getting the work, we should be paying attention. I guess Ms. Otto started receiving benefits in 1991. Yes. And she acknowledged then that her benefits may stop increasing. Yes. So I guess, why isn't your argument inconsistent with that fact? I mean, if she knew and acknowledged that her benefits may stop increasing, that seems inconsistent with what you're arguing here. Well, obviously, she's a riveter, not a lawyer. She didn't read the plan document. I think that argument goes to the statute of limitations. Was there clear and continuing repudiation of her claim, such that she could not believe that her benefits may stop increasing? No. She could not believe that it was not final and irrevocable. And, yes, she signed that, but it's certainly not final and irrevocable. They told her their interpretation of this provision. And she didn't disagree. But if we look at the provision, we see their interpretation was incorrect. So they can't simply say to her, look, this is how we interpret it. We're not going to change it. We're not going to change it. If you don't like it, you know, you go get a lawyer. Good morning. Still morning. May it please the Court, Daniel Fiers on behalf of the Employee Retirement Income Plan of Boeing. It is respectfully submitted to the panel that, essentially, appellant wishes or asks this Court to reinterpret a plan that has been in existence for decades, but reinterpret it in a way in which it has never been interpreted for over 20 years, and reinterpret it in a way that benefits the appellant, Ms. Otto. And at the same time, essentially focusing on two words, as opposed to the interplay of two words. And I'm going to ask Ms. Otto to explain the two significant sections of the plan, 4.2 and 4.4J, and the context in which they must be read. As this Court has already noted, one can look at the plan, and the term accrued benefit throughout has certain adjustments made to it. For instance, in 4.7, there are adjustments made to accrued benefit for 4.4, and in 4.4J, there are adjustments that are made. When one looks at... But linguistically, I mean, you could read this language, but not below the accrued benefit determined or redetermined, as the simple multiplication of the years times rate. Accrued benefit, that's the starting place, and that's multiplication. Although, even if one looks at 4.2, appellant has characterized it in a manner that is not payable at age 65 in 4.2A, and then in 4.2B, the section quoted by appellant as well, refers to the years of service at termination, which at 70 and a half, Ms. Otto was not terminated. So the plan has to interpret even those sections to have some rationality for someone who continues to work after the 65 retirement age that is originally in, 4.2A, and 4.4J, and 4.4J, and 4.4J, and 4.4J, and 4.4J. And so there's a need for interpretation that occurs even in the 4.2 section. So when you get to 4.4J, a section that is specifically drafted for the purpose of addressing a situation in which someone does continue to work, and at one time, counsel's correct, there was a statutory requirement, but that piece was repealed, and Boeing's plan continued to allow retirees to both draw down their retirement age and pension, as well as continue to work, and thus encourage people to keep working, because they can get both a pension and continue to work, a good thing. So there's no suggestion, either by appellant or anyone, that there is any desire to hurt or harm any of the retirees or pensioners that were qualified here. He's locked in at a, essentially locked in at a rate that was determined back in the 1990s. Not totally, but partially. I mean, first of all, the plan is a defined benefit plan that anyone that retires is typically locked in forevermore. So once they retire, whether it's 65, 70... She didn't retire. The company continued to get the benefit of her services. She didn't retire, but she's locked in at... Well, so for a few years, she did get the benefit. Right, for a few years. So she is in that sweet spot. She actually benefited greatly here, because she both continued to work and received a paycheck, and she also, by virtue of being an in-service pensioner or retiree, if you will, those are somewhat contradictory, but by virtue of that, she did have an escalation in her rate. It started out in the 500s, 592 or something, and went up for a couple of years, ultimately to 724. Other people retiring, they are flat. They stay the same. It's a defined benefit. She went up. Now that gets us to the 4.4J and the purpose of it. And basically, the purpose is so that you're not in a position to pay a pension twice, in essence, from an actuarial standpoint. So the mathematicians and the actuaries look at this and they say, okay, you will receive your pension starting at 70 and a half, and that will escalate, but we are going to redetermine that amount. And this is the section that Appellant somewhat glosses over. There's a redetermination of the accrued benefit, such that you deduct the equivalent, the actuarial equivalent of those payments that are already being made. Because, sure, there's a benefit that's accrued, but those payments are being made. And then when it gets to the point, actuarially, that you have drawn down a sufficient amount, then we're not going to penalize you and reduce your benefit, but your benefit will stay consistent with that redetermined amount from the prior December 31st. And so in the record, there's a very detailed methodology. We, in our briefs... How is the actuarial factor determined? By actuaries, and that's really not in dispute, Your Honor, with respect to this, but there is a chart that we have, and that's at the Appellate Supplemental Excerpt of Record 0077. And it's a detailed chart that was done by Mr. Jacobson, who has no stake in this. And by the way, there's no evidence or suggestion of bad faith. This is a plan that has a purpose of providing pension benefits, providing pension benefits for those that retire and those that continue to work, and making sure it's actuarially sound. And the actual benefits, they show how it's redetermined each year, and at some point after it's redetermined, where the amount of the benefits that you've already received more than offsets, because you're taking down your pension benefits, that's when you're not going to go below the accrued benefit as redetermined from the prior year, December 31st, just as the language says in the plan. Now, through the course of this, in 23 years, we've had one appellant, one person, one lawyer that has essentially said, well, I have a different read on this issue. The question really isn't who's specifically right or who's wrong, or whose interpretation is best, or who has a better interpretation. What we do know is that for 23 years prior to this issue coming up, that the plan interpreted it this way, and it wasn't challenged. We've had a district court judge, Kronstadt, a respected judge, twice analyze it, and not give a minute order, but analyze it twice. And he has said, well, while I understand you have an interpretation, certainly the plan is wrong. And he has said, well, I believe that the plan's longstanding interpretation that is consistent with the plan goals is an interpretation as well. And as counsel mentioned, as he must, under Conseco and Firestone and Ninth Circuit authority, that where there are varying interpretations of this language, especially that redetermination language, then there's great deference given to the plan, unless there's bad faith, or unless it's so arbitrary and capricious. I understand it correctly that because of adjustments in the rate that is multiplied by the number of years of service, that somebody now who would retire with much less years of service would be receiving a greater pension than Ms. Otto, who worked for the company for over 40 years? Not necessarily. I mean, Ms. Otto is someone who lived long beyond mortality rates. And if you look at the amount that she received and drew down, she in most cases will have drawn considerably more than others, whereas a normal retiree that lives on average pursuant to the mortality tables and the rates, it's going to be less while it is a later time. And they, of course, have not been drawing down a pension during this period of time, and they wait until the end. For instance, if Ms. Otto waited until age 95, we also have a chart, and that's in there as well, that's the Appellee's Supplemental Excerpt of Records at page 0079. It shows that had she waited until 95, and then took advantage of that higher amount at retirement, or termination, if you will, as per 4.2, then her amount would be considerably less. It was about $163,000. If she had retired at age 70 and a half... Right. If she had retired at 70 and a half, it's $334,000. By virtue of her being in that sweet spot, as I mentioned before, she gets the benefit of some escalation during the period of time she continues to work. But then at some point in the plan, the actuarial deduction of the cumulative payments, as per the language in 4.4J, those are deducted, and then she does hit the ceiling, and she gets the benefit of some escalation during the period of time she continues to work. I know she's making this argument for the first time, and you haven't been challenged on this before, and I know that you are arguing that the text is ambiguous, but it's interesting to me because it seems like Ms. Otto's interpretation of the plan does seem somewhat stronger, whether it's strong enough to be the only interpretation, I guess, is what we have to determine today. But doesn't the plan seem to distinguish between the redetermination and the reduction of the accrued benefit? The reduction is part of the redetermination. If you look at accrued benefit, that's a simple calculation. That is years' time service. There's not a redetermination. This is accrued benefit, which built into the definition is years' time service as well. If you look at the very last section of 4.4J... But that's what I want to talk to you about, because it seems like your interpretation is requiring us to use two different meanings of redetermined in the same plan section. Not really, because there's a determined or redetermined, and redetermined is, if you look at the last section, determined or redetermined as of the immediately preceding December 31st. So there's no dispute that there's a redetermination that takes into account the deductions, if any, down to no lower than the amount that the accrued benefit was redetermined to the year prior, December 31st, and then that becomes the floor for the amount payable on a going-forward basis. And only as reflected in the chart that I mentioned before, where the actuarial equivalent of those payments is determined on a going-forward basis. If the amount is so great that it exceeds the amount that she should have received, then at that point she continues to receive the amount that was the accrued benefit that was redetermined the prior December 31st. You may have answered this in response to Judge Manaski, but, you know, I guess let me put it a different way. Why should an employee keep receiving the money each year as the employee keeps working? Well, I suppose the analogy would be if you had a bank account, and if you left the money in the bank account and at age 65, 70, or 75 started taking the amount of money down for a period of time for the expected life, then there is going to be, obviously, a higher amount available. On the other hand, if you start taking that down before that higher age, you are taking down the funds that are part of that, that have already been put in the bank. You've attacked, essentially, the corpus, and there is less there. Here, in the case where someone takes in-service pension and is taking down or receiving their pension while working, there is a, they're both on and off the job, both on pension and receiving a salary, they are taking down money that otherwise would have only been given to them at the time where they retire or terminate for that limited period of time after retirement. So it's in a way an actuarial double dip, and it's based on mortality tables. It's not based upon Miss Otto. I mean, this case was styled as a class action, and so if you looked at the wider body or group of people, from an actuarial standpoint, if you did this, then those individuals would take down more from the plan than actuarially was accounted for. And that's why they have this 4.4J, where they make those reductions and then cap it off to where it will not increase once those deductions have been made, once the offsets have been made, then there is a reduction in the amount of money that they're going to receive. So their benefit will not increase after that. Once it, from a calculation standpoint, goes below, they'll still continue to give them the benefit, just like a retiree gets that stated benefit as of that time. There certainly could be an election for someone to wait and take it later. And, you know, obviously there's other examples, similar examples, Social Security, taking it earlier rather than later, your benefit is going to be less rather than greater. It's an actuarial mathematical equation. I probably don't have much time left, and it is late, but let me just close by saying, for over 20 years, the plan, the plan's lawyers, plan administrator, have interpreted this plan just the way I have stated, and there's no evidence of bad faith in that regard. Not until roughly 2014 is there a new interpretation that comes about. And as you can see from both argument, as well as from the report, as well as 200 pages worth of briefing at the district court level and at the court of appeal level, basically the appellant is saying that our interpretation is better, or it's the only conceivable interpretation. It's the only reasonable interpretation. And at the very least, that's simply not true, as evidenced by the longstanding interpretation, the consistency with the plan, and a district court judge who as well said, that's an interpretation, I understand that, but the plan has an interpretation too, and a longstanding practice that's consistent with the plan. And given that, and the state of the law, that great deference has to be given to the plan in terms of calculating this, otherwise it completely upsets the plan. The final point is, and I know we haven't, there hasn't been any considerable dwelling on it during argument, but this is a very important point, and this also does involve a situation where the plan has advised the appellant here, going back to 1991 and 92, consistently put the plan on notice of the fact that this was the calculation. And it's not until roughly 2014 that there's a challenge to this. And so the standard, we believe, notwithstanding the district court's decision, is whether or not they reasonably knew, whether the appellant reasonably knew that the claim was being denied, and we submit that over 20 plus years, the claimant or the appellant did. Thank you very much. Thank you very much for your time. Yes, Mr. Fierce points out that the early retirement benefit, which is described on EOR 2-111, has an actuarial reduction. Indeed it does. It says that the early retirement benefit is the accrued benefit, as computed in 4.2, actuarially reduced by a factor of 6% per year before age 62. That's right. It's using the accrued benefit and saying we're going to reduce it because you're going to get your pension for more years. That's exactly what we're talking about. Does a redetermination process in the first three examples in 4.4J2, we know means rate times years. The question is, does the use of redetermination mean something different in the fourth use? Mr. Fierce talks about withdrawing from a bank account, but Eleanor Otto is also putting money into the bank account. Boeing is putting money in for contributions for her additional years and the increased rate. So is she double dipping? Of course not. If she had left at age 73 and gone across the street to work for Lockheed and her identical twin sister, say, comes across the street and comes to work for Boeing, now both companies have to pay a double pension. They're getting the benefit of Ms. Otto's work with only a one-step, one-year increase in her additional accrued benefit. Thank you very much. I appreciate your time. For your arguments, the matter of Otto v. Employee Retirement Income Plan Hourly West is submitted, and that concludes our docket for today and the week. Thank you very much.
judges: Murguia, Watford, Vanaskie